[No. B229879. Second Dist., Div. One. Mar. 29, 2012.]

GECCMC 2005-C1 PLUMMER STREET OFFICE LIMITED PARTNERSHIP, Plaintiff and Respondent, v. NRFC NNN HOLDINGS, LLC, Defendant and Appellant.

[redacted]

**COUNSEL**

Boies, Schiller & Flexner, Jonathan D. Schiller, Jeremy M. Goldman and David L. Zifkin for Defendant and Appellant.

Duane Morris, Phillip K. Wang, Philippe A. Toudic, Meagen E. Leary; Gibson, Dunn & Crutcher, Theodore B. Olson, Dennis B. Arnold, Julian W. Poon and Blaine H. Evanson for Plaintiff and Respondent.

**OPINION**

**ROTHSCHILD, J.**—NRFC NNN Holdings, LLC (Northstar), appeals from a judgment holding it liable as a guarantor on a loan in favor of GECCMC 2005-C1 Plummer Street Office Limited Partnership (Plummer) and a post-judgment order awarding Plummer attorney fees and costs. We conclude that as a matter of law the guaranty was not triggered. Therefore we reverse the judgment and the postjudgment order.

## FACTS AND PROCEEDINGS BELOW

Plummer lent $44 million to a borrower.[1] Borrower used the money to purchase two commercial properties in Chatsworth. Borrower leased these properties under two leases to Washington Mutual Savings and Loan as the sole tenant. The loan was a nonrecourse loan, secured by the properties and certain other enumerated items but not by the assets of Borrower in general, subject to exceptions for certain forms of borrower misconduct. In addition, Northstar, an affiliate of Borrower, executed a guaranty that would be triggered by the same forms of borrower misconduct that triggered the exceptions to the nonrecourse character of the loan. The guaranty provided in relevant part that "[t]he Loan shall be fully recourse to Guarantor, and Guarantor hereby unconditionally and irrevocably guarantees payment of the entire Loan, if any of the following occurs after the date hereof: . . . (iv) without the prior written consent of [Plummer, either lease] is terminated or canceled."

Washington Mutual went out of business and it and its successors ceased paying rent to Borrower and abandoned the property. In February 2009, Borrower ceased making loan payments to Plummer. In May 2009, Plummer took title to the properties through a nonjudicial foreclosure sale in which it bid approximately $11 million. Plummer then brought this suit against Northstar as guarantor for the balance due on the loan—approximately $42 million plus attorney fees and costs.

Plummer and Northstar filed cross-motions for summary judgment. The principal issue was whether Washington Mutual's ceasing to pay rent and abandoning the property terminated the leases triggering Northstar's duty to pay the amount owing on the loan if the leases were "terminated" "without the prior written consent of Lender." The trial court concluded that the leases were terminated without Plummer's consent and, therefore, Northstar was liable on the guaranty. The court awarded Plummer damages of $42,220,349.35 plus prejudgment interest. In a separate order the court awarded Plummer attorney fees and costs in the amount of $760,797.50. Northstar filed timely appeals from the judgment and the postjudgment attorney fees award.

## DISCUSSION

The guaranty states in relevant part: "The Loan shall be fully recourse to Guarantor, and Guarantor hereby unconditionally and irrevocably guarantees payment of the entire loan, *if* any of the following occurs after the date

---

[1] The borrower's name is NRFC Sub Investor IV, LLC. We will refer to it as "Borrower." Borrower is not a party to this appeal.

hereof: . . . (iv) *without the prior written consent of [Plummer]* . . . (2) *either [lease] is terminated or canceled* . . . or the term of either [lease] is surrendered . . . ." (Italics added.)

It is undisputed that Washington Mutual breached the leases by ceasing to pay rent and abandoning the premises. The lease agreements between Washington Mutual and the Borrower provided: "13.1 Defaults. The occurrence of any one or more of the following events shall constitute a material default and breach of this Lease by Lessee: [¶] (a) The abandonment or surrender of the Premises by Lessee. [¶] (b) The failure by Lessee to make any equal monthly payments pursuant to paragraph 5.1 or any other rental payment required to be made by Lessee hereunder, as and when due . . . ."

Plummer argues Washington Mutual's breaches terminated the leases. It quotes the following language from Civil Code section 1951.2, subdivision (a):[2] "if a lessee of real property breaches the lease and abandons the property before the end of the term . . . the lease terminates." But section 1951.2, subdivision (a) does not apply to this case, as we explain below.

Plummer ignores paragraph 5.3 of the lease, which states in relevant part: "It is the intention of the parties hereto that this Lease shall not be terminable for any reason by Lessee[.] . . . Any present or future law to the contrary shall not alter this agreement of the parties." Thus, under the plain language of the lease, neither the lessee's failure to pay rent nor its abandonment of the property terminates the lease. Furthermore, this lease provision states that it overrides any "law to the contrary."

Plummer also omits the beginning words of section 1951.2, subdivision (a). The first sentence of subdivision (a) states in relevant part: *"Except as otherwise provided in Section 1951.4,* if a lessee of real property breaches the lease and abandons the property before the end of the term . . . the lease terminates." (Italics added.) Section 1951.4, subdivision (b) states in relevant part: "Even though a lessee of real property has breached the lease and abandoned the property, the lease continues in effect for so long as the lessor does not terminate the lessee's right to possession . . . ." In this case the leases state: "No act by Lessor other than giving notice of termination to Lessee shall terminate Lessee's right to possession." It is undisputed that Borrower never gave notice of termination to Washington Mutual.

For section 1951.4 to apply, however, there must be a provision in the lease in substantially the following form: " 'The lessor has the remedy described in California Civil Code Section 1951.4 (lessor may continue lease

---

[2] All statutory references are to the Civil Code.

in effect after lessee's breach and abandonment and recover rent as it becomes due, if lessee has right to sublet or assign, subject only to reasonable limitations).' " (§ 1951.4, subd. (a).) The leases in this case satisfy this requirement. Paragraph 13.2 states in relevant part that in the event of a material breach by the lessee, the lessor may: "(b) Continue this Lease in full force and effect, and this Lease will continue in effect as long as Lessor does not terminate Lessee's right of possession, and Lessor shall have the right to collect rent when due. . . . [I]f Lessee obtains Lessor's consent, Lessee shall have the right to assign or sublet its interest in this Lease . . . . Lessor's consent to a proposed assignment or subletting shall not be unreasonably withheld."

 Based on the lease provisions and the undisputed facts, we conclude the leases did not terminate and, therefore, the guaranty was never triggered.

As Northstar points out, this interpretation of the guaranty is consistent with the parties' intent, expressed in the deed of trust and other loan documents, to carve out exceptions to the loan's nonrecourse provision only in the event that Borrower commits certain "bad boy acts" that pose particular risks to Plummer's interests and collateral. (See Colletta & Kasell, *Nuances of Non-Recourse Carve-Out Guaranties*, PLI Real Estate Law & Practice Course Handbook Series (Jan. 14, 2010) 574 PLI/Real Estate 125, 127.) Those same acts trigger the liability of the guarantor. In the deed of trust, for example, Borrower covenants not to terminate either of the leases without Plummer's prior written consent. In the guaranty, Northstar agrees to be liable for the entire loan if either of the leases is "terminated" "without the prior written consent of [Plummer]." Thus, both the borrower and the guarantor are liable only if the borrower engages in the specified bad acts. In the absence of such misconduct by the borrower, the sole security for the loans is the property.

Plummer argues that although the lease termination provision in the guaranty "superficially resembles a 'bad boy' guaranty" in reality it operates like an absolute guaranty because full recourse is triggered regardless of whether the lease is terminated by the tenant or the landlord (i.e., Borrower). (Cf. *Wells Fargo Bank, NA v. Cherryland Mall Limited Partnership* (2011) 205 Mich.App. 99, 126 [812 N.W.2d 799, 815] [borrower's insolvency triggered the guaranty even though insolvency was not the result of the borrower's "bad boy act" because the guaranty "does not require insolvency to occur in any specific manner"].) The argument fails even assuming that we would follow the *Cherryland* opinion because it is based on a faulty

premise—that the leases were terminated. Only *Borrower* had the right to terminate the leases and it is undisputed that Borrower never did so.[3]

For the reasons set forth above, we conclude that the trial court erred in granting Plummer's motion for summary judgment and its motion for attorney fees. The court should have granted Northstar's motion instead.

## DISPOSITION

The judgment and the postjudgment order for attorney fees and costs are reversed and the cause is remanded to the trial court with directions to deny Plummer's motion for summary judgment and grant Northstar's. Northstar is awarded its costs on appeal.

Mallano, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied April 30, 2012, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied July 11, 2012, S202336. Cantil-Sakauye, C. J., did not participate therein.

---

[3] On appeal, Plummer contends that the Federal Deposit Inusrance Corporation (FDIC) terminted the leases after succeeding to Borrower's rights thereunder. In the trial court, however, Plummer expressly disclaimed any reliance on such a contention and argued, to the contrary, that the FDIC's "repudiation" of the leases was not "valid." Plummer may not assert a new thory of liability on appeal. (*Beroiz v. Whal* (2000) 84 Cal.App.4th 485, 498, fn. 9 [100 Cal.Rptr.2d 905].) Plummer also argues that the guaranty was triggered when Plummer itself terminated the leases after buying the properties through a foreclosure sale, because Plummer (in its capacity as lender) did not consent to Plummer's termination of the leases (in its capacity as lessor). It is undisputed, however, that Plummer purchased the properties after filing the operative complaint, which consequently does not allege Plummer's purchase and termination of the leases as a basis for liability. Plummer's termination is consequently irrelevant to the parties' summary judgment motions. (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74 [103 Cal.Rptr.3d 906] ["It is well established that the pleadings determine the scope of relevant issues on a summary judgment motion."].) In any event, Plummer did consent to Plummer's own termination of the leases.