Filed 12/15/23  Jelincic v. Cal. Public Employees Retirement System etc. CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOSEPH JOHN JELINCIC, JR.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM BOARD OF ADMINISTRATION,<br><br>    Defendant and Respondent. | A165562<br><br>(Alameda County<br>Super. Ct. No. RG21090970) |

Plaintiff Joseph John Jelincic, Jr., filed a petition for writ of mandate seeking declaratory and injunctive relief for alleged violations of the Bagley-Keene Open Meeting Act (Bagley-Keene Act; Gov. Code, § 11120 et seq.) in connection with an August 17, 2020 closed session meeting of the California Public Employees' Retirement System (CalPERS) Board of Administration following the resignation of its former chief investment officer (CIO), Ben Meng.  Among other things, plaintiff sought a declaration that CalPERS improperly relied on Government Code[1] section 11126, subdivision (a)(1) (section 11126(a)(1)) to discuss matters pertaining to the CIO in closed

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

session, and injunctive relief prohibiting CalPERS from citing that section to authorize closed session discussions related to its CIO in future.

The trial court concluded the August 2020 meeting had been improperly closed and ordered the production of records and most of the transcript from the meeting. As to the application of section 11126(a)(1), the so-called "personnel exception" to open-meeting requirements, the trial court ruled it was "[o]bjectively" not a basis to close the meeting in this case because none of the subjects authorized to be discussed in closed session under that section were discussed at the meeting. The trial court determined the injunctive relief sought by plaintiff was moot.

On appeal, plaintiff contends that CalPERS may not rely on section 11126(a)(1) to discuss matters related to its CIO in closed session, and may not cite that section on meeting agendas to justify closed sessions about the CIO. The parties disagree as to whether this appeal presents a justiciable issue, and if so, whether section 11126(a)(1) authorizes CalPERS to hold closed sessions to have discussions related to its CIO.

As we explain below, we conclude that the question is justiciable. However, whether the personnel exception in the Bagley-Keene Act applies to the CalPERS CIO ultimately depends on whether the CIO is a public officer within the meaning of the statute. Because the resolution of that question is a mixed question of law and fact that plaintiff failed to raise in the trial court and we are unable to resolve on this undeveloped record, we will affirm.

## I. BACKGROUND

On August 5, 2020, CalPERS CIO Ben Meng resigned, following accusations he had violated conflict-of-interest laws and failed to make financial disclosures required under California's Political Reform Act of 1974 (§ 81000 et seq.). A meeting of the CalPERS Board of Administration (the

2

Board) was noticed for August 17, 2020. The agenda for the meeting listed as its sole substantive item the " 'Chief Executive Officer's Briefing on Performance, Employment, and Personnel Items,' " which was to be a closed session pursuant to section 11126, subdivisions (a)(1), (e), and (g)(1). The Board held the closed session on August 17. After the meeting, plaintiff and his counsel submitted a public records request to CalPERS for a copy of the closed session transcript. CalPERS denied the request, asserting the meeting had been properly closed to discuss personnel matters under section 11126, subdivisions (a) and (g) (hereafter section 11126(a) and section 11126(g), respectively).

On March 8, 2021, plaintiff filed a petition for writ of mandate and complaint for equitable relief in the Alameda County Superior Court, alleging violations of the Public Records Act (former § 6250 et seq.) and the Bagley-Keene Act in connection with the closed session meeting held by the Board following Meng's resignation. Among other things, plaintiff alleged in his verified petition that (1) section 11126(a)(1) does not apply to discussions regarding the CalPERS CIO, and that such discussions are instead governed exclusively by section 11126, subdivision (g)(1) (section 11126(g)(1)); (2) the August 17 meeting was improperly closed to discuss matters related to the CalPERS CIO, and CalPERS continues to take the position it was lawful to do so; and (3) unless enjoined, CalPERS would continue to expend public funds by improperly closing its meetings and listing section 11126(a)(1) on its agendas when the only personnel matters it planned to discuss relate to the employment of the CIO.

3

In addition to seeking disclosure of the full meeting transcript,[2] plaintiff sought a declaration from the court that the "August 17, 2020 closed session violated the Bagley-Keene Act because the Board discussed matters that were not covered in its disclosure and that cannot lawfully be discussed in closed session," and that "§ 11126(a) does not authorize the Board to hold a closed session to discuss matters relating to its CIO, and that closed sessions to discuss such matters are instead governed by § 11126(g)." Plaintiff further asked the court to order the Board "not to cite Government Code § 11126(a) on its agendas as authority to close a session when the only personnel matters to be discussed in that closed session relate to the CIO."

On December 20, 2021, the trial court issued an order granting judgment and issuing a writ of mandate, which ordered disclosure of most of the closed session transcript. The court concluded CalPERS appropriately withheld a few small portions of the transcript as attorney-client privileged material and under section 11126(g)(1), but that "the vast majority" of the transcript should have been disclosed because "the primary purpose of the closed session appears to have been to have a wide-ranging discussion of existing CalPERS conflict of interest rules, procedures, and processes" rather than a briefing by or for the chief executive officer (CEO) related to " 'Performance, Employment, and Personnel Items' " as indicated on the meeting agenda.

---

[2] Plaintiff's petition for writ of mandate and complaint for equitable relief sought records related to the closed meeting on August 17, 2020, and separately sought records related to investments with a market value lower than their reported value under former section 6254.26. Plaintiff does not raise any challenge to the public records aspects of the proceedings in this appeal.

4

With respect to the application of section 11126(a)(1), the trial court's order stated: "Plaintiff argues that the Court should not consider whether the August 17, 2020 meeting could be closed under Section 11126(a)(1) because employment issues relating to the Chief Investment Officer fall under the more-specific Section 11126(g). The Court disagrees and will consider both exceptions. Both Sections materially overlap. That said, Section 11126(a)(1) does not appear to carve out any particular subset of employees. Nor does Section 11126(g) indicate that the protections under Section 11126(a)(1) are not also applicable to Board discussions about the CIO.

"The agenda for the August 17, 2020 closed session indicated that the Board would hear the 'Chief Executive Officer's Briefing on Performance, Employment, and Personnel Items.' . . . While this opaque description suggests that someone thought section 11126(a)(1) might be a basis for closing the meeting, further thought needed to be given before closing it.

"On August 5, 2020, Mr. Meng resigned as the CalPERS Chief Investment Officer. Conflict of interest issues appeared to motivate his resignation. . . . No one at the August 17 closed session had a copy of a performance evaluation for the CIO. It does not objectively appear that the Board intended to discuss his performance. He was not being appointed or hired/employed, and he was not being dismissed. Again, Mr. Meng had just resigned. Objectively, Section 11126(a)(1) could not be the basis for closing the meeting." The court rejected CalPERS's argument that the meeting was properly closed under section 11126(a)(1) to discuss the CEO's " 'oversight and implementation of policies and safeguards' " or the CEO's performance evaluation.

5

Several months later, on April 12, 2022, the trial court issued a second order with respect to certain portions of the transcript withheld under the public interest exemption of the Public Records Act. The court entered judgment granting in part and denying in part the petition for writ of mandate.

Plaintiff subsequently filed a petition for writ of mandate with this court, seeking review of the trial court's findings that CalPERS properly withheld the privileged portions of the transcript. We denied the petition on the merits and the California Supreme Court denied review. While the writ proceeding was pending in this court, plaintiff appealed from the judgment.

## II. DISCUSSION

Plaintiff contends the sole issue in this appeal is a question of statutory interpretation—whether CalPERS may hold a closed session to discuss the "appointment, employment, evaluation of performance, or dismissal" of its CIO under the general personnel exception of section 11126(a)(1), or whether CalPERS may only rely on section 11126(g)(1) to hold closed sessions related to "recruitment or removal" of the CIO. Although plaintiff characterizes the pertinent inquiry as a straightforward question of law, our analysis is complicated by (1) CalPERS's contention that the issue is not justiciable; (2) the language, structure, and history of section 11126; and (3) plaintiff's assertion (for the first time on appeal) that the CalPERS CIO is a "public officer" under a four-part test that depends on a factual record not developed in the trial court.

While we disagree with CalPERS about *justiciability*, we agree that plaintiff forfeited his argument that the CalPERS CIO is a public officer by failing to raise the issue below. Because the question of whether the CIO is a public officer turns on disputed issues such as the creation of the position, the

6

nature of the position, and the responsibilities of the CIO, plaintiff's failure to raise it in the trial court has resulted in an undeveloped record that impedes our ability to fully resolve his appeal. As to the questions of law raised by plaintiff regarding the meaning of section 11126, however, we conclude section 11126(g)(1) does not necessarily conflict with section 11126(a)(1) so as to preclude the application of the personnel exemption to the CalPERS CIO. Based on the record before us, plaintiff has not demonstrated reversal is warranted, and accordingly, we affirm.

## A. *Bagley-Keene Act*

"The Bagley-Keene Act requires that, with certain exceptions, '[all meetings of a state body shall be open and public . . . .' (§ 11123, subd. (a).) The policy behind this rule is set forth in section 11120, which states that public agencies and public servants exist to help conduct the public's business, that they may not decide what the public should know, and that the proceedings of public agencies must be conducted openly." (*Travis v. Board of Trustees of California State University* (2008) 161 Cal.App.4th 335, 341 (*Travis*).)

Two exceptions to the open meeting requirement are relevant to the question plaintiff presents in this appeal. The first is the broad personnel exception set forth in section 11126(a)(1), which states: "Nothing in this article shall be construed to prevent a state body from holding closed sessions during a regular or special meeting to consider the appointment, employment, evaluation of performance, or dismissal of a public employee or to hear complaints or charges brought against that employee by another person or employee unless the employee requests a public hearing." The second exception is found in section 11126(g)(1), which states: "This article does not prevent . . . [¶] (1) The Teacher's Retirement Board or the Board of

7

Administration of the Public Employees' Retirement System from holding closed sessions when considering matters pertaining to the recruitment, appointment, employment, or removal of the chief executive officer or when considering matters pertaining to the recruitment or removal of the Chief Investment Officer of the State Teachers' Retirement System or the Public Employees' Retirement System."

## B. Justiciability

At the outset, we will address (and reject) CalPERS's assertion that plaintiff's appeal must be dismissed because it fails to present a justiciable issue. CalPERS contends we should dismiss plaintiff's appeal because he already received effective relief when the trial court ruled that CalPERS improperly relied on section 11126(a)(1) to hold a closed session on August 17, 2020, and that the possibility of a *future controversy* over the application of section 11126(a)(1) to the CIO is too remote and speculative to warrant declaratory relief.

Plaintiff, on the other hand, contends the case presents a justiciable controversy because CalPERS has relied on section 11126(a)(1) improperly to discuss matters relating to its CIO at least five times and will continue to do so unless enjoined. Specifically, plaintiff contends that the parties' disagreement matters because section 11126(a)(1) "is significantly broader" than section 11126(g)(1), in that subdivision (a)(1) allows closed discussions of job performance, while subdivision (g)(1) does not. Plaintiff further asserts that because CalPERS has unlawfully invoked section 11126(a)(1) in the past and continues to claim that the personnel exception applies to its CIO, he is entitled to declaratory, mandamus, and/or injunctive relief.

"California courts will decide only justiciable controversies. [Citations.] The concept of justiciability is a tenet of common law jurisprudence and

8

embodies '[t]he principle that courts will not entertain an action which is not founded on an actual controversy . . . .' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573; *Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 540.)

The concept of justiciability is also incorporated in the equitable remedy of declaratory relief. " 'A declaratory relief action requires an actual controversy relating to the legal rights and duties of the respective parties' [citation], not merely ' " 'an abstract or academic dispute.' " ' [Citation.] ' "The 'actual controversy' language in . . . [Code of Civil Procedure] section 1060 encompasses a *probable future controversy* relating to the legal rights and duties of the parties . . . [that] '. . . is "ripe" when it has reached, *but has not passed*, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " ' [Citation.] In other words, ' "[d]eclaratory relief operates prospectively to declare future rights, rather than to redress past wrongs," ' thus ' " 'set[ting] controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; . . . the remedy is to be used in the interests of preventative justice, to declare rights rather than to execute them.' " ' " (*TransparentGov Novato v. City of Novato* (2019) 34 Cal.App.5th 140, 148, italics added by *TransparentGov Novato*.)

CalPERS first contends this case fails to present a justiciable controversy because the trial court has already resolved plaintiff's Public Records Act claim seeking the closed session transcript in his favor. Thus, CalPERS asserts, resolution of this appeal will have no practical effect on the issues raised in the trial court because even if this court reverses the trial court's ruling regarding the application of section 11126(a)(1), it will not cause any more of the transcript to be disclosed.

9

As plaintiff points out, however, he is not seeking review of an order withholding or releasing records. Plaintiff has already pursued his Public Records Act claim regarding the transcript to finality in the prior writ proceeding. On appeal, plaintiff seeks review of his claim that he is entitled to declaratory, mandamus, and injunctive relief to stop CalPERS from relying on the personnel exception to hold closed session discussions regarding the CIO.

CalPERS next argues we should not consider plaintiff's claim on the merits because he "in essence" asks us to review the *analysis* underlying the trial court's decision (in favor of plaintiff) that no portion of the August 17, 2020 closed session transcript was properly withheld under section 11126(a)(1). CalPERS asserts this is contrary to the foundational rule that a "ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) Because plaintiff sought declaratory relief to determine the applicability of section 11126(a)(1) to the August 17, 2020 closed session, and the trial court already determined the personnel exception did not apply because the Board did not discuss Meng's appointment, performance, or dismissal, CalPERS asserts that plaintiff is not entitled to review of the trial court's *reasoning* for its decision.

But CalPERS fails to acknowledge the scope of the relief plaintiff sought in the trial court. As explained above, in addition to a declaration from the court that the "August 17, 2020 closed session violated the Bagley-Keene Act because the Board discussed matters that were not covered in its disclosure and that cannot lawfully be discussed in closed session," plaintiff sought a declaration that "§ 11126(a) does not authorize the Board to hold a closed session to discuss matters relating to its CIO, and that closed

10

session[s] to discuss such matters are instead governed by § 11126(g)." Plaintiff further asked the court to "order the Board not to cite Government Code § 11126(a) on its agendas as authority to close a session when the only personnel matters to be discussed in that closed session relate to the CIO." The trial court rejected plaintiff's legal argument that the personnel exception cannot apply to the CIO, implicitly rejecting any relief in association with that claim. Thus, even if plaintiff's claim for declaratory relief with respect to the past violation was resolved in his favor, his request for declaratory, mandamus, and injunctive relief with respect to threatened future actions was not. (See, e.g., *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [appeal will not be dismissed despite mootness if there remain material questions for the court's determination; in action for declaratory relief, court must do complete justice once jurisdiction has been assumed].)

The Bagley-Keene Act authorizes "any interested person [to] commence an action by mandamus, injunction, or declaratory relief for the purpose of stopping or preventing violations or *threatened violations* of this article or to determine the applicability of this article to past actions or threatened future action by members of the state body." (§ 11130, subd. (a), italics added.) Here, plaintiff alleged in his verified petition that when his counsel wrote to the Board about the August 17, 2020 closed session, he complained that CalPERS was improperly relying on section 11126(a) to close discussions related to its CIO and asked the agency to stop doing so. CalPERS responded that the meeting was properly closed under sections 11126(a) and (g). Plaintiff further alleged that "CalPERS continues to take the position that § 11126(a) authorizes closed-session discussions relating to employment of its CIO," citing and attaching copies of five public meeting agendas in December

11

2020 and March 2021 for which CalPERS cited section 11126(a) to authorize a closed session to discuss the CIO position. CalPERS admitted in its answer that the agendas listed section 11126(a)(1) and with respect to most of them "the only personnel matter identified in those agendas to be discussed during the closed sessions relates to the CIO position." On this record, the undisputed facts demonstrate that CalPERS has repeatedly cited the personnel exception under section 11126(a) to authorize closed sessions related to its CIO.[3]

Moreover, at no point in the litigation has CalPERS conceded that section 11126(a)(1) is inapplicable to its CIO. To the contrary, it argued in the trial court, in the writ proceedings in this court, and in its briefing on appeal, that it may rely on the personnel exception to hold closed sessions regarding the CIO. When parties disagree whether a public agency has violated an open meeting law, and the agency refuses to admit its conduct violates the law, courts have determined a justiciable controversy exists. (See *California Alliance for Utility etc. Education v. City of San Diego* (1997) 56 Cal.App.4th 1024, 1029–1030 [declaratory relief action was ripe where parties disagreed whether city had violated Brown Act[4] and city failed to

---

[3] Plaintiff also asks us to take judicial notice of an agenda from June 2022, which he contends further demonstrates CalPERS is continuing to rely on section 11126(a)(1) to hold closed sessions regarding the CIO. As we explain further below, we decline to take judicial notice of this meeting notice, which did not exist at the time the trial court rendered its judgment, and which is unnecessary to resolution of the appeal. CalPERS emphasizes in its briefing on appeal that plaintiff cannot make a showing a justiciable issue exists by relying on this postjudgment agenda, but it does not address the *five* meeting agendas described in and attached to the complaint and writ petition which cited section 11126(a)(1) as authority for closed sessions relating to the CIO.

[4] Ralph M. Brown Act (§ 54950 et seq.; Brown Act).

concede its conduct constituted a violation]; *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 915–917 (*Shapiro*) [injunctive relief was justified because trial court could reasonably infer from city's past acts and continuing contentions that its practices complied with the Brown Act that there was a likelihood such conduct would recur in future]; *Common Cause v. Stirling* (1983) 147 Cal.App.3d 518, 524 [city attorney's refusal to concede Brown Act violations provided reason to believe it would continue illegal procedure in future absent judicial intervention]; cf. *TransparentGov Novato v. City of Novato, supra*, 34 Cal.App.5th at pp. 150–153 [no justiciable controversy existed where city council adopted specific policy to avoid complained-of Brown Act violations in future]; see also *Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1723 ["An action for declaratory relief lies when the parties are in fundamental disagreement over the construction of particular legislation, or they dispute whether a public entity has engaged in conduct or established policies in violation of applicable law."].)

Accordingly, we conclude a controversy between the parties exists and the appeal should not be dismissed.

### C. Statutory Interpretation

Having determined plaintiff's claim presents a justiciable issue, we turn to the question of statutory interpretation.

As explained above, the personnel exception in the Bagley-Keene Act allows state bodies to hold closed sessions to consider "the appointment, employment, evaluation of performance, or dismissal" of public employees. (§ 11126(a)(1); *Travis, supra*, 161 Cal.App.4th at pp. 341–342.) Section 11126, subdivision (b) provides that "[f]or the purposes of this section, 'employee' does not include any person who is elected to, or appointed to a

13

public office by, any state body."[5]  Section 11126(g)(1) contains language specific to the CIO of CalPERS, authorizing CalPERS to hold a closed session to consider "matters pertaining to the recruitment or removal" of the CIO.

On appeal, plaintiff asserts essentially two arguments with respect to the construction of these three provisions: first, that the more specific language of section 11126(g)(1) applies to the exclusion of subdivision (a)(1), and second, that the CalPERS CIO is a public officer under subdivision (b), and thus not an employee under subdivision (a)(1).  CalPERS responds that subdivision (g)(1) does not preclude subdivision (a)(1) from applying to the CalPERS CIO because the two statutes overlap.  Further, the legislative history indicates that the exception in subdivision (g)(1) for the CalPERS CIO was created because at the time, the CIO was a contractor, not an employee.  CalPERS further asserts plaintiff has forfeited the question of whether the CIO is a public officer because he did not adequately raise or brief the issue in the trial court, and contends we should not adopt his definition of a public officer because it presents a fact-intensive inquiry we cannot resolve on an undeveloped record.  In the alternative, CalPERS contends if we reach the merits, the CIO is an employee, not a public officer.

We will address each of these arguments in turn.

### 1.  General Principles

" 'Under general settled canons of statutory construction, we ascertain the Legislature's intent in order to effectuate the law's purpose.' [Citation.] We ' "look first to the words of the statute, 'because they generally provide the most reliable indicator of legislative intent.' " ' " (*Preven v. City of Los Angeles* (2019) 32 Cal.App.5th 925, 932.)  If the language of the statute is

---

[5] The parties do not dispute CalPERS is a state body within the meaning of the statute.  (§§ 11121, subd. (a), 20090.)

14

clear and unambiguous, there is no need for judicial construction and our task is at an end. If the language is reasonably susceptible of more than one meaning, however, we may examine extrinsic aids such as the apparent purpose of the statute, the legislative history, the canons of statutory construction, and public policy. (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838; *Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 180.)

### 2. Section 11126(g)(1)

Plaintiff first asserts (as he did in the trial court) that we need not reach the question of whether the CIO is an "employee" or "public officer" because closed sessions related to the CalPERS CIO are authorized only by the "more-specific" section 11126(g)(1) rather than the general personnel exception under subdivision (a)(1). Plaintiff contends we should rely on the principle that specific statutes prevail over general ones to conclude that only subdivision (g)(1) applies. For several reasons, we reject plaintiff's argument that this canon of statutory construction is determinative of the question whether subdivision (a)(1) applies to the CalPERS CIO.

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' " (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14.) Looking first to the plain words of the statute, there is no language in section 11126 that precludes both subdivisions (a)(1) and (g)(1) from applying to the CalPERS CIO. Section 11126(g)(1), allowing closed sessions for "recruitment and removal," clearly applies to the CIO because the position is specifically identified in the text of the statute. But there is no language in subdivision (g)(1) indicating that the personnel exception under subdivision (a)(1), allowing closed sessions for public employees to consider

15

"appointment, employment, evaluation of employment, and dismissal" cannot also apply to the CalPERS CIO if the CIO is a public employee. Moreover, neither subdivision (a)(1) nor subdivision (b) of section 11126 specifically exclude the CalPERS CIO from the definition of an employee—rather, under those subdivisions the relevant inquiry is whether the individual is an employee (under § 11126(a)(1)), or appointed to a public office by a state body and thus not an employee (under § 11126, subd. (b)). Because the statutory language is ambiguous as to whether section 11126(g)(1) functions as the exclusive exception for the CalPERS CIO, we turn to other indicators of legislative intent.

We look next to the legislative history. As originally enacted, section 11126 allowed for closed session discussions of personnel matters for *both* employees and public officers. (Former § 11126, added by Stats. 1967, ch. 1656, § 122, pp. 4026–4028.) In 1975, the statute was amended to exclude those appointed to public office from the definition of employee. (Stats. 1975, ch. 959, § 5, pp. 2238–2240.) Thereafter, multiple amendments were made to permit closed sessions for specific positions within various government bodies. (See e.g., Stats. 1977, ch. 730, § 5, pp. 2318–2320 [Postsecondary Education Commission Director]; Stats. 1980, ch. 1197, § 1, pp. 4043–4045 [Executive Officer of Franchise Tax Board]; Stats. 1981, ch. 180, § 1, pp. 1096–1099 [Executive Secretary of State Board of Equalization].)

In 1986, the Legislature amended section 11126 to allow the Teachers' Retirement Board to hold a "closed session when considering matters pertaining to the appointment or removal of the chief executive officer" of that system. (Stats. 1986, ch. 575, pp. 2013–2017.) Three years later, the Legislature expanded this provision to allow closed sessions for the CalPERS CEO, as well as the CIOs of both CalPERS and the State Teachers'

16

Retirement System (CalSTRS). (Stats. 1989, ch. 177, § 2, pp. 1138–1142.) The language added in 1989 remains unchanged from the language appearing in section 11126(g)(1) today, and provides authorization for both bodies to hold closed sessions "when considering matters pertaining to the recruitment, appointment, employment, or removal of the chief executive officer or when considering matters pertaining to the recruitment or removal of the chief investment officer." (Stats. 1989, ch. 177, § 2, p. 1142; § 11126, subd. (g)(1).)

A Department of Finance analysis for the bill that added the exception for the CalPERS and CalSTRS CEOs and CIOs, Assembly Bill No. 1284 (1989–1990 Reg. Sess.) (Assem. Bill 1284), suggests that the specific language used for the CIO positions was chosen because the position was a contract position. In the analysis, the bill summary indicates that Assem. Bill 1284 would authorize CalPERS and the Teacher's Retirement Board to meet in closed session to consider matters pertaining to *the recruitment or removal of the CIO* and to consider *personnel matters* relating to the CEO. The summary further states that it "appears to be appropriate" to have closed session meetings during interviews or removal discussions for both positions. (Dept. of Finance, Analysis of Assem. Bill 1284 (1989–1990 Reg. Sess.) as amended Apr. 6, 1989, p. 1, italics added.) In the "Specific Findings" portion of its analysis, the report states: "The Teachers' Retirement Board is authorized to meet in closed session to consider matters related to the appointment or removal of the State Teachers' Retirement System (STRS) Chief Executive Officer (CEO). The Board of Administration of the Public Employees Retirement System (PERS) does not have this exemption from the Bagley-Keene Open Meeting Act. *Neither Board is authorized to meet in*

17

*closed session to consider matters related to the Chief Investment Officer (CIO)*
*because these are contract positions.*" (*Id.* at pp. 1–2, italics added.)

The analysis further notes, "During the past year, both STRS and PERS conducted interviews of candidates for their CIO positions in open session. It appears that the requirement that the interviews be held in public session may have prevented some potential candidates from applying for the positions. Interviewing in public session involves high potential for a candidate's employer finding out that the candidate has applied for another job and revealing details about a candidate's professional and/or personal background that a candidate may prefer to remain confidential between the candidate and the employer." (Dept. of Finance, Analysis of Assem. Bill 1284 (1989–1990 Reg. Sess.) as amended Apr. 6, 1989, p. 2.)

Another bill analysis from the Assembly Committee on Public Employees, Retirement and Social Security reflects the same concerns with privacy during hiring for the CEO and CIO positions, noting, "Both PERS and STRS feel that conducting full job interviews in public session for their Chief Executive Officer and Chief Investment Officer prevents qualified candidates from applying because of the greatly enhanced possibility that the candidate's current employer will find out that they have applied for another job." (Assem. Com. on Public Employees, Retirement and Social Security, Analysis of Assem. Bill 1284 (1989–1990 Reg. Sess.) as amended Apr. 6, 1989, p. 2.) Comments in the Republican analysis of Assem. Bill 1284 reflect similar concerns with respect to firing: "Current law only permits STRS to meet behind closed doors to consider 'matters pertaining to' appointment or removal of its CEO. [¶] Both systems desire more privacy when discussing these matters. When PERS fired its last executive officer, Sid McCausland, an action which split the board, it had to be done in the open because the

open meeting act demanded it and McCausland wouldn't cooperate and just resign. This caused a lot of publicity, which angered many board members and administration officials." (Assem. Ways & Means Com., Republican analysis of Assem. Bill 1284 (1989–1990 Reg. Sess.) as amended Apr. 6, 1989, p. 1.)

An analysis by the Public Employees' Retirement System Legislative Analyst explained, in a background section, that the bill would "authorize the Board to meet in closed session for the purpose of hiring and firing the Executive Officer and the Investment Officer. The State Teachers' Retirement System currently has statutory authority for recruitment matters associated with the Executive Officer. This bill would grant the same authority to the PERS Board and would permit both systems to similarly handle Investment Officer recruitment. [¶] The appointment and consideration of these two officers is typically a matter of the Board's internal management and consideration of these employment matters in closed session does not impair the purpose of the Open Meeting Act, which is to allow the public to monitor the conduct of the affairs that pertain to it. PERS does not support the concept of closing its meetings when it conducts general business that affects the System's membership." (Public Employees' Retirement System Legis. Analyst, Analysis of Assem. Bill 1284 (1989–1990 Reg. Sess.), p. 1.)

From this somewhat sparse legislative history we can discern the following with regard to the purpose of the statute regarding the CalPERS CIO at the time of enactment: (1) the Legislature intended to allow closed sessions to provide additional privacy for the CIO, and (2) closed sessions were not already authorized for the CIO because it was a contract position. This history sheds little light on whether section 11126(a)(1) could apply to

19

the CIO if the CIO is an employee of CalPERS, rather than an independent contractor.[6]

Plaintiff urges us to rely on the principle "repeatedly explained" by our Supreme Court that " ' " ' "[a] specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." ' " ' " (*People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798, 808.) Plaintiff asserts because section 11126(g)(1) specifically refers to the CIO, it applies to the exclusion of section 11126(a)(1). The principle on which plaintiff relies, however, "is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict." (*People v. Walker* (2002) 29 Cal.4th 577, 586.) As our Supreme Court has explained, " 'The principle that a specific statute prevails over a general one applies only when the two sections cannot be reconciled. [Citations.]' [Citation.] If we can reasonably harmonize '[t]wo statutes dealing with the same subject,' then we must give 'concurrent effect' to both, 'even though one is specific and the other general.' " (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478; *Tafoya v. Hastings College* (1987) 191 Cal.App.3d 437, 447–448 [where subject matter is covered by *inconsistent* provisions, a specific provision prevails over a general one as an exception thereto, unless a contrary intent appears].)

---

[6] It appears at some point, CalPERS stopped relying on outside investment managers for its investment operations and established the "internal" position of CIO, which was exempt from civil service and appointed directly by the CalPERS Board. (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 269 (2003–2004 Reg. Sess.) p. 3.) The parties do not dispute that the CalPERS CIO is no longer a "contract position."

Here, the two subdivisions (a)(1) and (g)(1) do not obviously conflict, and it may be possible to harmonize them. First, the terms used in the general personnel exception are not the same as those in the special CIO exception. (Compare § 11126(a)(1) [permitting closed session to consider appointment, employment, evaluation of performance, or dismissal] with § 11126(g)(1) [permitting closed session to consider recruitment or removal].) Because the provisions do not expressly overlap, there does not appear to be any conflict on the face of the statute. Second, as discussed above, the legislative history suggests that the CIO exception in section 11126(g)(1) was necessary because the CIO was a contract position; thus, there is nothing inconsistent about applying the personnel exception if the CIO *is* an employee, as opposed to a contractor.

Moreover, the prevalence of a specific statute over a general statute is a tool to assist us in deciphering legislative intent, not a static rule for rote application. "[T]he canons of statutory construction are not dispositive but rather are guides courts can resort to when a statute's plain language and legislative history do not compel a particular result." (*Grassi v. Superior Court* (2021) 73 Cal.App.5th 283, 306.) On the other hand, "when the legislative history answers the question of legislative intent, or at least provides clues to legislative intent, the legislative history is a more reliable indicator of the legislative intent than inferences of intent based on canons of statutory construction." (*People v. Superior Court (Ortiz)* (2022) 81 Cal.App.5th 851, 862.) Here, as explained above, the legislative history suggests that the Legislature established the CIO exception in section 11126(g)(1) to cover "recruitment or removal" but not employment because the CIO was a contract position.

In his reply brief, plaintiff argues the legislative history for the 1989 amendment "simply confirms that the Legislature originally intended for § 11126(g)(1) to provide the sole authority for closed-door discussions of the CIO," and CalPERS has shown no evidence of a contrary intent. Plaintiff asserts that the Legislature's *failure to amend* section 11126(g)(1) when it amended a *different* statute in 2003, shows the Legislature's intent that only subdivision (g)(1) would apply to the CalPERS CIO. Specifically, plaintiff asserts, "The Legislature was presumably aware of the specific provisions in § 11126(g)(1) governing closed session discussions of the CIO when it added the CIO position to § 20098, and if it had intended to abrogate them it would have done so."

We are not persuaded. Section 20098 provides authority for the CalPERS Board to "appoint . . . [and] fix the compensation of an executive officer, a general counsel, a chief actuary, *a chief investment officer*, a chief financial officer, a chief operating officer, a chief health director, and other investment officers and portfolio managers . . . ." (*Id.*, subd. (a), italics added.) As plaintiff recognizes, the 2003 amendment was a response to *Westly v. Board of Administration* (2003) 105 Cal.App.4th 1095, in which the Third Appellate District held CalPERS lacked plenary authority under article XVI, section 17 of the California Constitution to designate its employees exempt from civil service and pay them compensation in excess of amounts approved by the Department of Personnel Administration. (*Westly*, at pp. 1099, 1110–1113, 1116–1117.) After the *Westly* decision, the Legislature amended section 20098 to provide CalPERS authority to appoint certain positions and pay salaries in excess of amounts allowed by the civil service laws. (Stats. 2003, ch. 856, §§ 1, 3, pp. 6262–6263, 6264–6265.) As the Legislature declared in enacting the legislation, "The express purpose of

22

this act is to enable the Board of Administration and the Teachers' Retirement Board to attract and retain key personnel by empowering those boards to establish both appropriate classifications within the civil service for its senior executive and investment management employees and the compensation paid to those employees, competitive with the compensation paid to employees in other retirement and financial service entities, consistent with the holding of Westly v. Board of Administration, and notwithstanding the provisions of the Government Code that provide the State Personnel Board and the Department of Personnel Administration that authority." (*Id.,* § 1, p. 6263.)

The 2003 amendment was clearly aimed at providing CalPERS authority to offer certain employees competitive salaries. Neither the statutory language nor the legislative history makes any mention of the Bagley-Keene Act or discusses whether it might apply to any of the positions identified in section 20098. We are not convinced the Legislature's silence about open meeting requirements when evaluating whether CalPERS should be given authority to pay higher salaries under a different law is indicative of legislative intent about the scope of section 11126.[7]

Plaintiff also asserts that allowing both section 11126(a)(1) and section 11126(g)(1) to apply to the CIO would violate the rule that a construction that renders a word surplusage should be avoided. Specifically, plaintiff argues if section 11126(a)(1) (allowing closed session discussions of "appointment, employment, evaluation of performance, or dismissal") applies

---

[7] In this regard, we also observe in the words of our Supreme Court, that "[i]t is axiomatic that in assessing the import of a statute, we must concern ourselves with the Legislature's purpose at the time of the enactment." (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1048; *Reznitskiy v. County of Marin* (2022) 79 Cal.App.5th 1016, 1025–1026.)

23

to the positions listed in section 11126(g)(1), it would render the use of the terms "appointment," "employment," and "removal" in subdivision (g)(1) surplusage.

First, the terms "appointment" and "employment" in section 11126(g)(1) are used only with reference to the CalPERS CEO, not the CIO. Whether section 11126(a)(1) can apply to the CEO is not at issue here. Second, in his opening brief, plaintiff concedes that "dismissal" and "removal" have "slightly different connotations," arguing that employees are dismissed, while public officers are removed. It is also possible, however, that the Legislature used those terms for the CIO in section 11126(g)(1) because the position was a contract position to which the personnel exception did not apply. Because that reason is supported by the legislative history, it is a stronger indication of legislative intent than a general canon of construction. (See, e.g., *Skidgel v. California Unemployment Ins. Appeals Bd.*, *supra*, 12 Cal.5th at p. 21 [" 'the canon against surplusage is [merely] a guide to statutory interpretation and is not invariably controlling.' [Citation.] . . . "We will not use it 'to defeat legislative intent' as gleaned from available sources, including the rest of the words in the statute, related statutes, the 'legislative history and the "wider historical circumstances" of the enactment.' "].)

We also recognize, as plaintiff emphasizes, that statutory exceptions authorizing closed sessions under California's open meeting laws are construed narrowly, while the Bagley-Keene Act is construed liberally in favor of openness in conducting public business. (See *Travis*, *supra*, 161 Cal.App.4th at p. 343; *Shapiro*, *supra*, 96 Cal.App.4th at p. 917 [stating same principle with respect to the Brown Act].) However, the personnel exception under section 11126(a)(1) exists " ' "to permit free and candid discussions of personnel matters" ' " for public employees who are not public

officers.  (*Travis*, at p. 342.)  Our review of the legislative history of section 11126(g)(1) reveals an understanding on the part of the Legislature at the time of enactment that closed sessions were not authorized for the CIO because it was a contract position.  Accordingly, we reject plaintiff's premise that section 11126(a)(1) cannot apply to the CIO merely because section 11126(g)(1) specifically does.

## D.  *Public Officer*

Plaintiff next contends section 11126(a)(1) cannot apply to the CalPERS CIO because the CIO is a public officer, not an employee.  We agree that whether section 11126(a)(1) applies to the CalPERS CIO turns on the answer to this question.  CalPERS, however, argues we should not reach this issue for two reasons: first, because plaintiff forfeited the issue by failing to raise it in the trial court, and second, because his failure to raise it in the trial court has resulted in an undeveloped record on issues of fact necessary to resolution of the appeal.[8]  We agree with CalPERS that plaintiff forfeited this issue by failing to raise and brief it in the trial court and that we should not decide it on an undeveloped record.

" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.  This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.' "  (*Nellie Gail Ranch*

---

[8] Plaintiff argues in his reply brief that CalPERS "makes a strange waiver claim" regarding his argument that the CIO is not an employee— plaintiff asserts CalPERS "does not claim that he has waived this entire argument," only that he "cannot rely on the Attorney General's opinion to support it."  We have carefully reviewed CalPERS's opposition brief and have concluded this is not an accurate characterization of CalPERS's argument.

*Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

Although we have discretion to consider pure questions of law raised for the first time on appeal, we will not exercise such discretion here because whether the CalPERS CIO is a public officer is a mixed question of law and fact that is inappropriate to decide on an undeveloped record. (See, e.g., *NBC Universal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1237 [declining to consider issue requiring application of equitable principles to undeveloped record]; *City of Newport Beach v. Sasse* (1970) 9 Cal.App.3d 803, 811–812 [court would not consider new defense involving legal and factual questions open to controversy and not presented at trial].)

As both parties argue, the terms "public office" and "public officer" have no fixed meaning in California, and the distinction between an employee and a public officer varies according to context. (*Brown v. Pacifica Foundation, Inc.* (2019) 34 Cal.App.5th 915, 928 ["California does not recognize a single legal definition of the term 'public office' "; "The term 'public office' is ambiguous on its face and its meaning depends on issues of context and intent"]; *Spreckels v. Graham* (1924) 194 Cal. 516, 530 ["It is difficult, perhaps impossible, to frame a definition of public office or public officer

26

which will be sufficiently accurate, both as to its inclusion and its exclusion, that meet the requirements of all cases."]; 68 Ops.Cal.Atty.Gen. 34, 37 (1985) [issue of whether a particular position at a state agency is an employee or a public officer is often controversial and " '[r]esolution of the issue usually depends on the facts involved in a particular case' "].)

Although plaintiff asserts he "raised" the issue in the trial court in a paragraph in his motion for judgment, his argument consisted of two sentences asserting section 11126(a)(1) cannot apply to the CIO because the position is appointed by the CalPERS Board pursuant to section 20098 and CalPERS is a state body. Plaintiff also *cited* to the 1985 opinion of the Attorney General concluding the Director of the California Transportation Commission is a public officer, but he did not discuss it. Nor did plaintiff assert the CIO was a public officer, discuss the legal test for a public officer, or present any evidence or argument in the trial court as to why the CIO is a public officer. Indeed, plaintiff expressly argued in his reply brief that the trial court did not have to consider whether the CIO was a public officer, because it was irrelevant and there is no fixed definition of a public officer. (See, e.g., *GECCMC 2005-C1 Plummer Street Office Limited Partnership v. NRFC NNN Holdings, LLC* (2012) 204 Cal.App.4th 998, 1003, fn. 3 [declining to consider new argument on appeal where appellant disclaimed reliance on contention in trial court].)

Although CalPERS argued in its opposition to the motion for judgment that the CIO is an employee, not a public officer, it cited only to the legislative history for section 20098 to argue that the use of the term "employee" in the Legislature's statement of purpose demonstrates the CIO is an employee. Certainly the four-part test that plaintiff advocates on appeal was not proposed or discussed in the trial court, and no factual findings were

made by the trial court based on any of the evidence cited by plaintiff on appeal. In light of the complexity of the "public officer" inquiry and the absence of any findings by the trial court, we decline to exercise our discretion to determine the issue for the first time on appeal.[9] (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275–1276, fn. 3 ["Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion."]; *Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233, 1273 [appellate court refused to exercise discretion to consider new issue on appeal concerning question of public interest because it did not present pure question of law].)

## E. Requests for Judicial Notice

The parties ask us to take judicial notice of various materials that were not before the trial court.

Plaintiff asks us to take judicial notice under Evidence Code section 452, subdivisions (c) and (h) of a copy of a June 3, 2022 meeting notice/agenda packet downloaded from CalPERS's website. Plaintiff contends the agenda packet is relevant to this proceeding because it shows that CalPERS is continuing to rely on section 11126(a) to discuss matters relating to the CIO. The notice reflects that one of seven items on a closed

---

[9] At oral argument, plaintiff requested that we remand the matter to the trial court to hold a hearing on the issue of whether the CIO is an employee or public officer, citing to *Li v. Jin* (2022) 83 Cal.App.5th 481, 496–497. *Li*, however, was an anti-SLAPP (strategic lawsuit against public participation) case in which the appellate court determined it was appropriate to remand for the trial court to conduct a second-step analysis as to whether the plaintiffs' claims had "minimal merit," after it reversed the trial court on the first step analysis regarding whether the allegations of the complaint arose from protected activity. Unlike this case, it did not concern a party's forfeiture of an issue on appeal by failing to address a mixed question of law and fact in the trial court.

28

session agenda scheduled for June 13, 2022 was "Chief Investment Officer—Personnel, Employment and Performance," and the agenda states the session will be closed under section 11126(a)(1) and subdivisions (c)(16) and (e). Plaintiff concedes the agenda did not exist when the trial court issued its judgment.

CalPERS opposes the request for judicial notice on the grounds that we should not take judicial notice of matters occurring after the entry of judgment absent exceptional circumstances, the request is problematic because it asks us to make new factual findings on appeal, and even if we considered the agenda, it would not result in reversal of the judgment.

"Generally, reviewing courts do not take judicial notice of facts not presented to the trial court. Rather, 'normally "when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." ' " (*Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 625 (*Weiss*).) It is undisputed the material in the June 3, 2022 meeting notice was not in existence when the trial court entered its judgment, and thus we conclude it would be inappropriate to take judicial notice. Plaintiff identifies no "exceptional circumstances" to depart from this general rule. (*Ibid.*) In any event, because it is unnecessary to our determination regarding the justiciability of plaintiff's claims, we decline to take judicial notice of the meeting agenda packet for this additional reason.

Plaintiff also requests we take judicial notice of material pertaining to the legislative history of section 20098, a State Personnel Board specification for the position of CalPERS CIO, and portions of CalPERS's briefing in the prior writ proceeding in this court. The request for judicial notice of the State Personnel Board specification is denied, as it was not before the trial court in

deciding this matter.[10] (*Weiss*, *supra*, 39 Cal.App.5th at p. 625.)  Plaintiff's requests for judicial notice of the legislative history of section 20098 and CalPERS's prior briefing are granted.  CalPERS's request for judicial notice of material relating to the legislative history of section 11126(g)(1) is granted.

### III.  DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

---

[10] For the first time in his reply brief (and not in his request for judicial notice), plaintiff asserts we must take judicial notice of the State Personnel Board specifications because, under Evidence Code section 459, we are required to take judicial notice of each matter that the trial court was required to notice under Evidence Code section 451.  The trial court was not required to take judicial notice of material not presented to it.  In any event, even were we to take judicial notice of the State Personnel Board specifications, they are not dispositive of whether the CIO is an employee or public officer as they address only one of the several elements plaintiff proposes as the test for a public officer.

30

MARGULIES, J.\*

WE CONCUR:

HUMES, P. J.

GETTY, J.†

A165562
*Jelincic v. California Public Employees' Retirement System Board of Administration*

---

\*  Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

†  Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.